
LAW OFFICES OF
**CHRISTOPHER H. WING**
2701 DEL PASO ROAD, SUITE 130 #45
SACRAMENTO, CA 95835
State Bar #063214

ATTORNEYS FOR:   Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA | No.   2: 10 Cr. 0239 WBS |
|---|---|
| Plaintiff, | SENTENCING MEMORANDUM |
| v. | |
| JOHN R. VANZETTI | DATE:   SEPTEMBER 12, 2016 |
| Defendant, | TIME:   9:00 AM |
| | COURTROOM: 5 (14TH FLOOR) |
| | HON. WILLIAM B. SHUBB |

We submit that a fair and reasonable sentence for Mr. Vanzetti would be a judgement of probation with 6 months of home detention, a $20,000.00 fine, restitution of $214,544.50, which will be paid at sentencing, and 200 hours of community service with San Joaquin County Habitat for Humanities[1].

**1. Review of Mr. Vanzetti's Involvement:**

During the approximate six-months charged in the Information to which Mr. Vanzetti plead, he was "on site" and involved in purchases of foreclosed homes on April 13-14, 2009, May 12, 2009, June 1-5, 2009, June 8-11, 2009, August 31, 2009 and October 2, 2009.[2] A total of 12 days. During that time he participated in the purchase of seven (7) properties:

---

[1] Mr. Vanzetti has already been working with that agency and has and will continue to bring his expertise in home building, scheduling and logistics from his over 30 years as a licensed contractor, his understanding of real estate from his over 30 years as a Real Estate Broker.

[2] However, those auctions were actually continued from January 2, 2009 through October, 2009.

///

1

### 1570 Jacob Avenue, Ripon California

This purchase of this property was instigated by Mr. Chandler on April 14, 2009 and was initially sold by the crier for $244,000.01 and held by Mr. Ghio, Mr. Vanzetti, Mr. Northcutt and Mr. Chandler who paid one penny above the opening bid; i.e., $244,000.00.

### 1646 Hummingbird Avenue, Tracy California

This property was purchased by Mr. Vanzetti on May 12, 2009 at the auction ultimately he and Mr. Ghio paid $1,250.00 each to the other partnership and $1,250 each to Mr. Katakis and $1,250 to Chandler and Northcutt.

### 23 West McKenzie, Stockton California.

This property was purchased on June 1, 2009 by Mr. Vanzetti and Mr. Ghio's partnership with his sister with a second auction price $3,000 over the initial sale price, which was split between Mr. Northcutt and Chandler and Mr. Katakis.

### 667 Stevens Street, Lathrop

This was a property purchased on June 4, 2009 by Mr. Hutz with Mr. Vanzetti and Mr. Ghio. Mr. Hutz did not appear on the paperwork as he said he was going through a divorce and didn't want his name to be discovered. It seems there was no second auction for this property.

### 3945 Montaro Lane, Stockton California

This property was another "four-way" purchase on June 8, 2009, between Mr. Ghio and Mr. Vanzetti on the one hand and Mr. Northcutt and Mr. Chandler on the other. The second auction price was $5,000 in excess of the original sale and Mr. Katakis received those funds, with each partnership paying $2,500.

### 1101 St. Moritz, Manteca California

Also a "four way" purchase, the property was acquired on June 12th 2009, for an opening bid of $174,675.01 and there were no payoffs to anyone.

### 4222 Gesselle, Stockton California

This property, purchased on August 31, 2009, with a bid of $96,000, above the opening price of $93,011.04, and the partnership of Mr. Northcutt and Mr. Chandler were paid $2000 for not bidding.

Mr. Vanzetti's position in the partnership with Mr. Ghio, over the 11 years prior to the actions charged herein was to be the property person; i.e., the one who would go out before

/ / /

the auction to visit those properties he and/or Mr. Ghio felt were worth looking at. He would review the neighborhood, try to talk to the owners or tenants and size up the properties. This was his sole, direct involvement for all the days at issue herein, other than for the 12 days where he made a passive appearance at the Courthouse auction and the secondary bids.

Though not part of the initial meetings with the various parties involved with the creation of the bidding process, Mr. Vanzetti was told that one of the participants, the believes, Mr. Parker had talked with an attorney who informed him that their actions were legal, but after his participation when Mr. Ghio was unavailable, he felt that had to be wrong, and he has regretted simply stopping any participation since.

As will be discussed in more detail below, Mr. Vanzetti also was caused to purchase of 2455 Stewart Street, Stockton on July 22, 2009. This was a property of which Mr. Vanzetti was not initially aware and he was not at the Courthouse or its environs on that date. He received a phone call from Mr. Chandler at approximately 4:00 pm directing him to proceed to a gas station at the corner of Pershing Avenue and Highway 5 to purchase a property. At that point, Mr. Ghio became part of the conversation and contacted the bank, had the cashier's check prepared and told Mr. Vanzetti to pick it up on his way to meet Mr. Longley. He did as he was told and ultimately the property went, we believe to Mr. Swanger for himself or Mr. Katakis.

**2. The Recommendations of the Probation Department:**

As noted in the Formal Objections submitted by Mr. Vanzetti, the Probation Recommendation as noted in the Reply to the Informal Objections, utilizes the figure of $11,916,525.40 as the Volume of Commerce to enhance Mr. Vanzetti's Total Offense Level by two (2) levels pursuant to USSG §2Rq.1(b)(2)(B). This violates Rule 11(e)(6) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence and USSG §1B1.8, as that figure comes from the information proffered to the government on December 19, 2009. It is my understanding that both the Probation Office and the government are aware of this problem, and it has not been directly dealt with because of a policy of the Probation Office, and that the Office expects the government to acknowledge this in their filing of a recommendation to the Court pursuant to USSG §5K1.1.

/ / /

While noting that Mr. Vanzetti is eligible for probation, Report page 19, Paragraph 95, the next paragraph notes that as a Zone D score eliminates that possibility. However, as it is my understanding that Probation has no issue with the imposition of the rules of USSG §1B1.8, that would result in at worst a Zone C score and the possibility of a sentence of probation.

Probation justifies their recommendation for Mr. Vanzetti against the argument made in the Informal Objections that they recommended a split-sentence for Mr. Hutz, who's Volume of Commerce was higher than Mr. Vanzetti's by noting that Mr. Hutz's Volume of Commerce was a combination of his and his partner, Mr. Boyd Camper, who was never charged by the government and that Mr. Vanzetti's was split with his partner Mr. Ghio. This misses the point of the fact that Mr. Vanzetti and Mr. Ghio agreed to their figure, while they could have refused under their utilization of USSG §1B1.8, an option not available to Mr. Hutz or any other defendant before the Court.

**3.  The Recommendation of the government:**

Though I have not yet received the government's written recommendation to the Court, it is my understanding that they will recommend a 10% reduction under USSG §5K1.1 and a sentence of 11 months and no probation or split sentence.

Further, it is my understanding that while the government will acknowledge the facts supporting both Mr. Vanzetti's and Mr. Ghio's "immunity" under USSG §1B1.8 and the Federal Rules of Criminal Procedure and the Federal Rules of Evidence, it seems that their recommendation is based on two factors: that Mr. Vanzetti did not testify, and that a recommendation of probation and/or a split sentence would result in some diversity of sentence issues.

We believe they are wrong in both justifications:

As far as Mr. Vanzetti's failure to testify, that was the government's decision and one which I have never understood, as Mr. Vanzetti purchased a property, 2455 Steward Street, Stockton California on July 22, 2009 directly from Mr. Longley well after the close of that

/ / /

day's auction at a gas station off Interstate 5 and Pershing Avenue in Stockton. Mr. Vanzetti received a call from Mr. Chandler and was told to proceed to that location and to purchase the property and Mr. Ghio contacted the bank and had Mr. Vanzetti pick it up.  This type of "ex cathedra" transaction it seemed to me would be a significant problem for Mr. Longley and his attorney, but the government, while saying they would put Mr. Vanzetti on the witness list, felt confident of convicting Mr. Longley.  They never interviewed Mr. Vanzetti for trial prep, though he disclosed the information in his one debriefing with the government, and did not put him on the witness list.  He clearly had relevant information concerning one of the defendants and it was the government's choice not to call him.  He should not be punished for their decision because he is placed in the cohort of non-witness by whatever rubric they have devised to mete out USSG §5K1.1 recommendations.

   The lack of having that opportunity to help atone more publicly and to show the prosecutors, the public the defendants that he was ashamed and sickened by his participation in this conspiracy has made this process even more difficult for him.  He didn't have much to give, but was willing to give it all.

   Diversity of sentences is also not an issue as the fact that both Mr. Ghio and Mr. Vanzetti have an immunity pursuant to USSG §1B1.8 is not a ground for such a finding by the court.  U.S. v. Buckendahl, 251 F. 3d 753, 761 (8th Cir. 2001).  Further, only Mr. Vanzetti, Mr. Hutz and Mr. Ghio are eligible for probation as the other defendants have entered pleas to 18 U.S.C. §1349, conspiracy to commit mail fraud.  This is punishable by a term of not more than 30 years, 18 U.S.C. §1341 and thus is a Class B Felony pursuant to 18 U.S.C §3559 (a)(2) and thus not eligible for probation under 18 U.S.C. §3561(a)(1).

   The cooperation by Mr. Vanzetti and Mr. Ghio was exceptionally significant.  The information which they provided in their proffer covered 1049 properties, from January 2, 2009 through December 11, 2009.  It listed the opening bids for a vast majority of the properties and the winning bid at the "knock out" round of the second bidding process in a large number of the properties.  It included the funds received by Mr. Ghio and Mr. Vanzetti and from whom and the funds received by all the defendants and their phone numbers. It was simply a road map of the conspiracy and a review of the plea agreements available

/ / /

LAW OFFICES OF
WING & PARISI
SACRAMENTO, CA.

establishes that it was the bases of those. The only thing it lacked was the ownership of the mortgages upon which the foreclosures were based.

While the original prices paid for the properties could be found by going through the records of each property, as it is suspected that the "winning" parties did not disclose their second bid price when recording their ownership documents, the "real price" paid would have been much more difficult to determine and would have required review of all the parties bank records, which may or may not have shown any cash transactions. In short, it allowed for pleas by 10 defendants from April 2010 to February 2012 and only 3 defendants choosing to go to trial. To say that the government's recommendation is stingy is an understatement. Mr. Vanzetti deserves a larger downward departure, as we have requested in our sentencing request.

Mr. Vanzetti and Mr. Ghio issued 1099's on the funds paid to others, but it is not known if any others did so. Mr. Ghio was the person with the knowledge of the specifics and where Mr. Vanzetti could help him in preparing the documents to lay out the facts of the purchases and how they transpired.

**4. Factors that Warrant Departure and/or a Sentence Outside the Advisory Guideline System:**

**A. Probation:**

1. Mr. Vanzetti has been convicted of a Class C felony and thus is eligible for probation under 18 USC §3561;

2. As noted in the Draft Presentence Report, Page 14, paragraph 77, he has been involved in Community affairs and service for over 30 years. His health is good and he is both a long-time resident of San Joaquin County is very familiar with the cities therein and has already been volunteering at the San Joaquin County Habitat for Humanities where he can bring his skills in building and real estate;

3. At the time of Sentencing, Mr. Vanzetti will make restitution to the owners of the mortgages from which he profited $214,544.50, the amount recommended in the Probation Report. He will also pay the fine found in the Plea Agreement, $20,000.00 at the time of sentencing. This should obviate the need for any of the special conditions listed on pages 23 and 24 of the Report

///

other than that of the community service obligation, which we have suggested should be increased to 200 hours.

4. He has effectively been on informal probation from his plea on June 24, 2010, over 6 years and has been a model citizen for that period of time as he was before becoming involved in these purchases, directly and indirectly.

5. He has been punished directly by loss of his Real Estate License, his Contractor's License and his relationship with his banks, having been unable to refinance purchases until this year and has had this case hanging over his head since June 2010.

**B. Sentencing Outside the Advisory Guideline System:**

1. 18 USC §3553(a) as well as the cases cited in Paragraph 105 and the legions of cases upon which they rely, also require that the sentence must also take into account the history and characteristics of Mr. Vanzetti, himself. While those have been articulated in the Draft Presentence Report, specifically in the discussion under Part E, and in these informal objections, they seem to have been ignored in the recommendation.

2. A sentence of probation, with home detention and Community Service, assuming that the Court finds Mr. Vanzetti's Offense Level is in Zone B, after a 6 year interval from the illegal actions, a history as a model citizen, with no other blemish on his record and having lost both his Real Estate license and his Contractor's License and having been barred from access to commercial banking for over 6 years, as noted in Mr. Vanzetti's letter of May, 2016, all send a strong message that this was a serious crime and should provide sufficient deterrence to any other normally law-abiding person, like Mr. Vanzetti from getting involved in such illegality in the future. The fact that The Bank of Stockton this year finally allowed Mr. Vanzetti to be able to refinance shows their faith in his integrity at this point.

3. Mr. Vanzetti cannot seriously be viewed as a threat to commit any further crimes and has not even been under Pre-Trial Services monitoring during the 6 year span from plea to sentencing. What Mr. Vanzetti and his community needs is for him to get past this and to use his talents and abilities to give back to his community and atone for his mistakes.

4. Even absent any further information, the factors found in 18 USC §3553 support a variance of 3 levels, making Mr. Vanzetti eligible for probation and a sentence under Zone B.

5. The detailed Probation Report discussion of Offense Conduct, pages 6-7, paragraphs 3-12 fails to mention Mr. Vanzetti. He is specifically absent from the "Group" or "Regulars" noted by Probation. He is first mentioned simply as a partner of Mr. Ghio and ".. only appeared at auctions when Ghio was unable to attend." The properties purchased on those dates are listed above.

/ / /

      Further, in footnote 1, the Report notes that Mr. Vanzetti did not participate in the secondary auctions. His participation while not only brief, only began over three (3) months after the activities began and he was never involved in any dissuasion tactics nor even present to add some objective support to dissuade others from bidding on properties.

6. Mr. Vanzetti has a history of community service as noted in the Probation report, page 15, paragraph 78 and the letter of John Boss where he discusses his involvement with Mr. Vanzetti's actions as a soccer coach during a portion of Mr. Vanzetti's coaching activities.

Attached to this Memorandum, I have attached two Exhibits, **Exhibit A**, a letter from Mr. Pedro Sanchez Jimenez, a person who purchased a home from Mr. Vanzetti, and **Exhibit B**, a letter from Ms. Irene Dishman who has sent a follow-up letter to her earlier letter to the Court.

**CONCLUSION:**

Mr. Vanzetti has been deeply affected by his failure to walk away from the bidding process once he had become aware of just what was going on in mid-April of 2009. His anxiety turned into shame and disgust when he became aware that his instincts had been right and he had lacked the courage to act upon those instincts. He cooperated completely with the government from the beginning and began the slow and painful road back to being "normal", being able to relate with others and accepting his failures.

The government's recommendation of 11 months is meagre and inappropriate. However even a strict 10% reduction from a level 13 should result in a level 11 disposition; and a Zone B recommendation for probation considering all of the circumstances of his the factors discussed here and in the Presentence Investigation Report: the nature and circumstances of his participation in the scheme, his remorse, cooperation, background of service to his community and his desire to do so in the future. A sentence of probation with 6 months home detention, payment of a fine, Restitution and Penalty Assessment will be sufficient to further the purposes of sentencing found in 18 U.S.C. §3553(a).

Dated: September 6, 2016                                         Respectfully Submitted

                                                                                /S/
                                                Christopher H. Wing
                                                Attorney for John R. Vanzetti

LAW OFFICES OF
WING & PARISI
SACRAMENTO, CA.

/ / /